## TROUTWINE v. HOFF.

(Supreme Court, Appellate Division, Third Department. May 6, 1908.)

1. DAMAGES—NOMINAL DAMAGES—EXTENT NOT SHOWN.

Where defendant agreed to take plaintiff's note for four months in payment of certain treasury stock, and to renew the note each four months thereafter until the dividends on the stock paid the same, and plaintiff was subsequently compelled to pay a renewal note by a bank in which one of the renewal notes had been discounted, in the absence of a showing as to the value of the stock, plaintiff is entitled to merely nominal damages for breach of the agreement to renew.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 19–33.]

2. SAME—BREACH OF CONTRACT—FAILURE TO RENEW NOTE.

The damage for failure to perpetually renew a note is the remainder after deducting from the face the present value of a discharge from an obligation to pay in perpetuity the annual interest of 6 per cent. on the face of the note.

Kellogg and Chester, JJ., dissenting.

Appeal from Trial Term.

Action by George F. Troutwine against Francis L. Hoff. From a judgment for nominal damages only, plaintiff appeals. Modified and affirmed upon the opinion of the judge at Trial Term.

Following is the opinion of H. T. Kellogg, J., at Trial Term:

In order to induce the plaintiff to purchase treasury stock of the Idaho-Maryland Development Company at the price of $2,500, the defendant, an officer of said company, agreed to take a note of the plaintiff therefor for four months and individually promised to renew the same each four months thereafter until the dividends upon said stock should pay the said sum. It is evident from the written contract itself that the plaintiff was to pay all interest charges upon said note, for the renewals were to continue, not until the note and the interest was fully paid by dividends, but until the sum of $2,500, which was the principal sum of the note, had through such dividends been fully paid. That the plaintiff was to pay all interest charges upon said note and its renewals is proven beyond controversy by the conduct of the plaintiff, who at the time of the giving of the original note and the many renewals thereof at all times prepaid the interest charges without objection or protest, thus giving to the agreement a practical interpretation which cannot now be departed from. The original note and its renewals were payable to the order of the defendant. They were discounted by him at a banking house. After many renewals the discounting bank at last refused to renew again, sued the note then possessed it, and the plaintiff was compelled to pay the same. It is evident that the parties to this action made a valid agreement based upon consideration and that the defendant has broken that agreement. It is not clear, however, that the plaintiff has sustained any damage. He has retained in his hands the stock sold him through the defendant, and will retain the same, although he obtains judgment in this action; for that stock never belonged to the defendant, and therefore a judgment in favor of the plaintiff will not in itself transfer title in the same. It does not appear that the stock in question is without value. For all that appears, that stock may be worth

much more than the sum of $2,500. For this reason, therefore, it is impossible to determine whether the plaintiff has been injured at all by the defendant's breach, or how great, if any, that injury may be. Again, it was agreed between the parties that the plaintiff should pay interest upon the note and all its renewals. If no dividends were ever paid by the company, then under the agreement the plaintiff would be obliged to pay in quarterly installments perpetually the interest charges on the principal sum thereby promised. The damage of the plaintiff is plainly the remainder after deducting from the sum of $2,-500, the present value of a discharge from an obligation to pay in perpetuity the annual interest of 6 per cent. on such sum. What is it worth to be relieved of the payment of the interest on that sum of money for an infinite number of years? Evidently the sum of $2,500.

For all these reasons, judgment shall follow for the plaintiff for nominal damages only.

Argued before SMITH, P. J,. and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Wood & Maider (F. C. Wood, of counsel), for appellant.
Horton D. Wright, for respondent.

PER CURIAM. Judgment modified so as to award plaintiff $17.57 damages, and, as thus modified, affirmed, without costs, upon the opinion of H. T. Kellogg, J., at Trial Term. KELLOGG, J., dissents in opinion in which CHESTER, J., concurs.

JOHN M. KELLOGG, J. (dissenting). This controversy arises over a contract, made October 17, 1904, for the sale by the defendant to the plaintiff of stock in a gold mining company. The contract recited that the plaintiff had purchased 5,000 shares of the stock for the sum of $2,500, "and, in consideration of said purchase, the party of the second part [defendant] agrees to accept said note of $2,500 for four months, agreeing to renew said note each four months thereafter until the said dividends shall pay the $2,500, it being further agreed by the party of the first part [plaintiff] that he will apply the dividend as fast as received to the payment of the said stock." The certificate of stock had indorsed upon it, or there was delivered with it, a "guaranty certificate," signed by the company, which provided that the holder "is entitled to receive a sum equal to the price paid for the certificate, with ten per cent. interest per annum for one-half the net proceeds of the mine operated by said company after a working fund not to exceed $25,000 has been provided, until a sum equal to the full purchase price of the certificate shall have been paid. All certificates of this company stock sold carrying this agreement are to participate proportionately in the one-half of the said net earnings above specified, and no dividends shall be paid by this company until the amount due hereunder shall have been paid to the holder thereof. Not more than 400,000 shares of stock shall be sold with the right to participate as above provided." The note was given, and after several renewals the defendant failed to renew, and the plaintiff was compelled to pay it, and brings this action to recover the amount so paid. Nothing has been realized from the stock. The trial court found that by reason of the defendant's breach of the agreement the plaintiff was entitled to damages, but awarded only six cents, upon the theory that the plaintiff was bound to pay the renewals perpetually, and therefore was not

injured by the present payment of the principal. The statements made by the defendant that the stock was being sold for the company to raise money to unwater and retimber its mine, and that the note was to be discounted by one of its directors, undoubtedly influenced the plaintiff, but they cannot influence the court, because the defendant, with full knowledge of the facts, has omitted to swear to them. The note was payable to the defendant and indorsed by him. It does not appear that it was indorsed by or discounted for any other person. It does not appear that the company ever received any of the proceeds. If the stock was actually being sold for the company to raise $100,000, the guaranty certificate limiting this class of stock to 400,000 shares raises the inference that the defendant was principally interested in this sale. If 5,000 shares were being sold for $2,500, such terms would indicate that 400,000 shares should produce $200,000, with the resultant profit to some one of apparently $100,000.

The plaintiff is a glove manufacturer at Gloversville. Some time before this transaction, the defendant came to Gloversville, and sold the plaintiff 5,000 shares of this stock for $2,500, and received his notes and checks therefor, with the parol understanding that the note could be renewed if the plaintiff desired. Thereafter plaintiff visited the mine, was much pleased with what he saw, and spoke highly of the work going on and of the prospects of the mine. After his return the defendant came to Gloversville upon two occasions, and tried to sell plaintiff 5,000 shares more of the stock. Plaintiff swears that the defendant said that, as a matter of inducement, he would make an agreement whereby it would not need a cent of money to purchase this stock. The defendant swears he told plaintiff that, if he would give him a letter recommending the mine, he would carry his notes so that he would not have to put anything in it. "I would carry his notes until the dividend paid for the stock; that I stood pretty well with the bank and would renew these notes. We expected the thing would pay dividends inside of a year, and I would carry the notes for him and would give him an agreement to that effect." Both parties, it seems, gave evidence of the conversations at the time of and preceding the transaction. If upon such a sale defendant took a note without interest, agreeing to renew it until the note is paid from a source outside of the parties to it, it would naturally follow that the plaintiff is not responsible for the cost of the renewal. Defendant paid the discount upon the original note. The cost of renewing a note payable without interest is the discount for the time of the renewal. If this note were renewed from time to time promptly, it would never be in default, and would never call for more than the original amount. That, perhaps, suggests a reason why the contract provided that the dividends from the mine were to pay the $2,500 without mentioning interest. There could be no interest if the defendant kept his promise. Assuming, as we may, that the stock was the defendant's and the note his, the transaction then assumes the form whereby the defendant holds the plaintiff's note for four months, without interest, which defendant is to keep renewed until the dividends from the mine pay it. If he retains the note, there is no necessity for

the renewal or the payment therefor. If he uses the note at a bank, and thus obtains the money upon the plaintiff's credit, he should pay the renewals. The plaintiff acquires no interest in the stock, except as the holder of the paper title, until the dividends which he receives as a trustee have extinguished the note. Then, and then only, the stock is of value to him. The plaintiff was not seeking an indorser, and he did not understand, and the defendant did not intend him to understand, that he was to pay this note, and that the defendant was indorsing the renewals for his accommodation. The refusal to buy more stock except upon this special contract shows that both parties had in contemplation, if the defendant was acting honestly, that the stock itself should extinguish the note. The defendant has violated the essential part of the agreement, the condition without which plaintiff never would have entered into it, and a business man has been required to withdraw from his business $2,500 in cash to meet an obligation which has been thrust upon him by the defendant's breach of contract. According to the intent and the agreement of the parties, plaintiff should still have his $2,500, and the defendant should finance the transaction for the future as he agreed. Plaintiff therefore has a cause of action against the defendant for the violation of his agreement, and should recover such damages as will fairly restore him to the position in which he was before the breach occurred. It is true that the ordinary damages for the nonpayment of money is legal interest, and that, if payment of a debt bearing interest is brought about before the due day, the debtor ordinarily may not recover more than nominal damages, as he escapes the payment of interest. But that does not meet the situation here. The plaintiff was not the defendant's debtor. The note and the contract are to be read together, and make the only contract between the parties. It does not follow that, if the plaintiff is liable to pay for the renewals, he has not suffered damage by being compelled to pay a debt which it was agreed he never should pay. The only purpose of this contract was to assure the plaintiff that the dividends, and not himself, should pay this note. The parties, by their contract, have established that as between them there is a difference between the payment of the note at once and the payments of renewals for it until the mine produces the expected results. The court should not do violence to their intentions, but should treat the matter as the contract treated it; that is, that there is a material difference between the continued renewal of a note and the present payment of it. We should not indulge in refined distinctions to relieve the defendant of the burden of his contract and to deprive the plaintiff of the only benefit which could be derived from it. If the defendant may with impunity violate this agreement, the court is encouraging double dealing, and depriving a solemn contract between the parties of all the force which they intended to give it.

The history of the late panic is an ample illustration that a business man who has made definite contracts for the renewal of his bank paper is in a very advantageous position, and that he would have suffered great damage if by a violation of his contracts he had been compelled to raise money to pay notes thus provided for. We can-

not say, and we are not called upon in behalf of the defendant to assume, that the cost of the renewal of a bank note perpetually, where there is no obligation to pay the principal, will be such that it is equivalent to the present payment of the principal. The future is so uncertain, and the financial horizon is so clouded, that we cannot forecast them. Justice is done by disregarding the fact that the note was discounted at the bank, and treating it as a note received by the defendant for the sale of his stock, which by agreement the plaintiff was not personally to pay, and which by trick the defendant has compelled him to pay. It needed no renewals and required no payment for renewals. The court can do justice to these parties without determining that the first fault on the part of the defendant was in the failure to renew the note the last time. Previously, by a failure to renew one of the notes, he had obtained in some way the plaintiff's note for $500 to be used in renewal, but discounted it for his own benefit, while the plaintiff still remained liable upon the $2,500 note. It is not difficult to determine that his effort from the first was to compel plaintiff to pay the note. The sale of this stock, with the guaranty certificate, the defendant's agreement, and the statements he made, show that the transaction was at least peculiar, and throw a great doubt upon the fairness of the defendant's conduct from the beginning, and indicate that the stock had no substantial value. Without considering when the defendant began to act unfairly, it is evident that by trick he has obtained $2,500 from the plaintiff and had the benefit of it, and has compelled the plaintiff to pay $2,500 which he had led the plaintiff to believe he would never be required to pay. The language and the scheme were the defendant's, and should be construed against him, and he should be held to the construction which he wanted the plaintiff to put upon it. If the defendant is now required to restore to the plaintiff the $2,500 and the interest, he is still entitled to receive the first $2,500 which the plaintiff realizes from the dividends on the stock. The parties are just where the contract put them, except the defendant, by refusing to renew the note according to the agreement, has lost the further benefit of the plaintiff's credit. The fact that the stock stands in the plaintiff's name will probably never benefit him or injure the defendant.

But it is said that the plaintiff has paid several renewals, and has thus construed the contract as creating an obligation so to do; but the defendant paid the discount upon the first note. The plaintiff denies that he understood that the note was to be discounted at the bank. If that is so, it is not strange that when he found it had been discounted he was willing to pay the renewal rather than have any controversy at that time. Four months after the transaction, and at the first renewal, he probably continued to believe the story of the defendant, and, as he was soon to be 'so rich from the mine, perhaps he did not feel like questioning a small matter. Both parties have been sworn, and have been permitted to give their version as to just what was said when the contract was made, and neither affirms that anything was said as to who was to pay the renewals. Their evidence leaves nothing to inference, except the interpretation of what they said and wrote at the time. It is quite probable that both were

not thinking the same thing, although their statements do not materially differ.   Treating the stock and note as the defendant's, his duty to pay the renewal is plain, and the fact that the plaintiff may have misunderstood, or did not insist upon, his legal rights four months after the contract was made, should not now alter the legal rights of the parties, especially in favor of the defendant who has violated his contract and wronged the plaintiff.

I therefore think the plaintiff is entitled to recover the amount paid, with interest, and that the judgment should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.